UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CONLEY, III,

                     Petitioner,

v.

BECKY CARL,

                     Respondent.

_____/

Case No. 2:22-cv-10658

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER
## <u>DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]</u>

A Michigan Circuit Court judge sentenced Petitioner Robert Conley, III, an inmate at the St. Louis Correctional Facility in Michigan, to 154 to 420 months' imprisonment for assault with intent to do great bodily harm and other weapons related crimes in June 2017. ECF 1, PgID 2–3; ECF 9-11, PgID 591–92. Petitioner must serve seven to twenty-nine more years on his sentence. He filed a pro se habeas petition under 28 U.S.C. § 2254 and challenged his 2017 convictions. ECF 1. The State responded. ECF 8. Because none of the five claims Petitioner raised in his petition merit habeas relief, the Court will deny the petition. The Court will also deny Petitioner a certificate of appealability and permission to appeal in forma pauperis.[1]

---

[1] The Court need not hold a hearing because Petitioner is proceeding pro se and is incarcerated. E.D. Mich. L.R. 7.1(f)(1).

## BACKGROUND

Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court. ECF 1, PgID 2. Both courts affirmed his conviction. *Id.* at 2–3. "On habeas review, the Court presumes the factual findings of the Michigan [S]tate courts are correct." *Thomas v. Stephenson*, 898 F.3d 693, 696 (6th Cir. 2018) (alterations omitted) (citation omitted). Thus, the Court will use the opinions of the Michigan courts for background.

Petitioner's convictions arose out of a violent assault that occurred in Saginaw, Michigan in June 2016. ECF 11-1, PgID 727. The victim, Salvador Gomez, was dating the mother of Alonzo Castillo, a friend of Petitioner. *Id.* Gomez testified that he was cleaning out a residential rental property his sister owned on the day Petitioner attacked him. *Id.* at 1221. Gomez spent the night before he was attacked drinking and using cocaine. *Id.* He decided to spend the night at the rental property by himself. *Id.* Gomez was sleeping on a chair in the living room when someone knocked on the door. *Id.* He looked outside and saw Petitioner. *Id.* Petitioner identified himself to Gomez by his nickname "Mitch-Match," and he asked Gomez to open the door. *Id.* Gomez responded that he did not trust Petitioner and would not let him inside. *Id.* Gomez then returned to his chair and fell asleep. *Id.* But he was awakened again by a sound. *Id.* When Gomez opened the door to check on the noise, he was struck in the head by a man wearing a bandana over his face. *Id.*

Gomez and his attacker began to fight. *Id.* The attacker called for help. *Id.* Petitioner responded to the call for help, put a gun to Gomez's head, and told him he

was going to die. *Id.* As Gomez continued to fight, the gun was discharged twice, without striking anyone. *Id.* Eventually, the two attackers fled. *Id.* Gomez recognized Petitioner because they had been previously introduced. Gomez also recognized the gun as belonging to his girlfriend because it was a distinctive .357 revolver with seven chambers, an orange sight, and a black rubber handle. *Id.* at 1221–1222. After the attackers fled, Gomez called the police. *Id.* at 1222. Officer Jonathan Beyerlein responded to the scene. *Id.* Officer Beyerlein found Gomez covered with blood on the front porch. *Id.* Gomez was taken to the hospital by ambulance, and he received eight-five staples for one laceration and five stiches for another. *Id.* Eight days after the attack, Saginaw Police stopped a vehicle. *Id.* Castillo was sitting in the passenger seat, and officers recovered a seven-shot revolver from the floor. *Id.* At trial, Gomez identified the weapon recovered from the car as the one used during the assault. *Id.*

Castillo denied any involvement in the attack and said he did not know Petitioner. *Id.* But when Michigan State Police interviewed Petitioner, he stated that he knew Castillo and had not seen him for a month. *Id.* Petitioner also denied knowing Gomez. *Id.* At trial, eyewitness Felton Shelton testified as a defense witness. *Id.* Shelton testified that he heard the beginning of the commotion and saw five people in front of the residence. *Id.* But because it was dark, Shelton could not see the people clearly. *Id.*

At trial, a cell phone expert testified for the State. *Id.* at 1222. The expert testified that he examined a cell phone that belonged to Petitioner and determined that the phone made nine connections between 1:16 a.m. and 1:40 a.m. on June 3,

2016, from a cell tower located just north of the crime scene. *Id.* The phone also made connections at 4:16 a.m. and 4:20 a.m. that night from another tower located north of the crime scene. *Id.* The phone was used to call Castillo's girlfriend and sister multiple times in the days before the crime. *Id.*

After trial, the jury convicted Castillo and Petitioner of assault with intent to do great bodily harm less than murder, conspiracy to commit assault with intent to do great bodily harm less than murder, and several firearm offenses. ECF 1, PgID 1. The Michigan Court of Appeals affirmed his conviction. *People v. Castillo*, No. 338754, 2020 WL 4726545 (Mich. Ct. App. Aug. 13, 2020). Petitioner then filed an application for leave to appeal to the Michigan Supreme Court. *Id.* at 20–68. He raised five questions on appeal:

> I.     Trial counsel was ineffective for (1) failing to investigate, interview, and/or cross-examine an eyewitness at trial; (2) failing to introduce an alibi defense, (3) failing to introduce testimony to the fallibility of eyewitnesses; and (4) failing to object to the joint trial.

> II.    The trial court violated defendant-appellant's right to due process by refusing to allow cross-examination of the complainant concerning drug debts and witness tampering.

> III.   Defendant-appellant was denied a fair unbiased and impartial jury.

> IV.    The Court of Appeals abused its discretion in denying defendant-appellant's motion for remand to expand the record concerning his alibi.

> V.     Defendant-appellant is entitled to a new trial based on newly discovered evidence.

*Id.* at 21. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *Id.* at 17. Petitioner raised the same five arguments in his habeas petition. *See* ECF 1.

## LEGAL STANDARD

The Court may grant a State prisoner habeas relief only if his claims were adjudicated on the merits and the adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established law. 28 U.S.C. § 2254(d)(1). "A [S]tate court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court cases] or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [that] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (cleaned up) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

A State court does not unreasonably apply Supreme Court precedent when its application of precedent is merely "incorrect or erroneous," but only when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). "A [S]tate court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the [S]tate court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). A State court need not cite Supreme Court cases "so long as neither the reasoning nor the result of the [S]tate-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Decisions by "lower federal courts may

be instructive in assessing the reasonableness of a [S]tate court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (cleaned up).

## DISCUSSION

The Court will address each of the five arguments Petitioner presented in order. Then, the Court will consider whether to deny Petitioner a writ of habeas corpus, a certificate of appealability, and leave to appeal in forma pauperis.

I.    Ineffective Assistance of Counsel

Petitioner asserted that his trial counsel was ineffective because he (1) failed to prepare for Shelton's trial testimony and eliciting the exculpatory testimony Shelton gave at the remand hearing; (2) failed to present an alibi defense; (3) failed to introduce expert testimony about the reliability of eyewitness testimony; and (4) failed to move for a separate trial from Castillo.

To succeed on an ineffective assistance of counsel claim, a petitioner must show that the performance was deficient and the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A deficient performance is prejudicial to the defendant if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The petitioner must show "a reasonable probability that, but for [] unprofessional errors, the result of the proceeding would

6

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (cleaned up). But the *Strickland* standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation omitted). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "the standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (cleaned up). This standard requires the Court to give "both the [S]tate court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

A.    *Interview*

Petitioner argued that his trial attorney was ineffective because he did not interview Shelton, one of the witnesses the State called, before trial and failed to elicit testimony on cross-examination that Petitioner was not one of the men at the crime scene. ECF 1, PgID 37. Petitioner previously raised the same claim, and the Michigan Court of Appeals deemed it waived. *Castillo,* 2020 WL 4726545, at *7. ("To the extent that [Petitioner] is raising an ineffective-assistance argument in connection with

Shelton's testimony, this argument was affirmatively waived below, and we need not address it.").

When State courts decline to reach the merits of a claim because of application of "an independent and adequate [S]tate procedural rule," federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) cause for the default and (2) actual prejudice from the alleged violation of federal law or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991).

Waiver of a claim is an adequate and independent State law ground for refusing to review the alleged error. *See Shahideh v. McKee*, 488 F. App'x. 963, 965 (6th Cir. 2012) (citing *People v. Carter*, 462 Mich. 206 (Mich. 2000)). Furthermore, the allegation of ineffective assistance of counsel is irrevocably barred from review because Petitioner did not appeal the Court of Appeals' holding. *See* ECF 1, PgID 20–68. Thus, Petitioner cannot argue on habeas that his appellate counsel was ineffective for waiving the claim because he has not exhausted that claim. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000). The first ineffective assistance of counsel claim consequently fails.

### B.   *Alibi Defense*

Petitioner next argued that his counsel should have presented an alibi defense. ECF 1, PgID 39–40. The Michigan Court of Appeals rejected the argument and stated that "there is nothing to support [Petitioner's] argument that he had an available alibi witness that his attorney improperly failed to present." *Castillo*, 2020 WL 4726545, at *13. Here, Petitioner again offered nothing to support his argument. *See*

ECF 1. Simply put, there is no record evidence that Petitioner had a viable alibi defense to present at trial. Under 28 U.S.C. § 2254(d), habeas review is "limited to the *record* that was before the [S]tate court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (emphasis added). Because nothing in the record shows that trial counsel was ineffective for failing to present an alibi defense, the second argument fails.[2]

### C.   Impeachment

Petitioner next claimed that his counsel failed to adequately impeach the victim, Gomez. ECF 1, PgID 40–44. The Michigan Court of Appeals rejected that claim and held that "Petitioner has not offered any affidavits or testimony indicating that an expert would have testified in his favor under the particular circumstances of this case." *Castillo*, 2020 WL 4726545, at *12. And the Court of Appeals held that Gomez "had met Petitioner twice in the past stated that he was a "hundred percent sure" that it was Petitioner who assaulted him and picked Petitioner from a photographic lineup." *Id.* (alterations omitted). Moreover, the Court of Appeals held that "[t]he credibility of identification testimony is a question for the trier of fact,"

---

[2] In his fourth claim on habeas review, Petitioner argued that the Michigan Court of Appeals abused its discretion by failing to remand the case for a hearing on his claim that his counsel should have raised an alibi defense. ECF 1, PgID 60–63. But besides the fact that Petitioner's second appellate attorney declined the opportunity to include the issue in his motion to remand, whether the State court erred under M.C.R. 7.211 by not remanding the case for a hearing does not provide a cognizable basis for granting habeas relief. *See Hayes v. Prelesnik*, 193 F. App'x. 577, 584 (6th Cir. 2006) (holding that denial of a petitioner's motion for an evidentiary hearing is a question of State law that cannot be considered on habeas review.). Thus, the fourth claim Petitioner raised in his habeas petition, ECF 1, PgID 60–63, fails.

and Petitioner did "not adequately support[] his assertion that an expert witness would have aided his defense by questioning the reliability of this testimony. [Thus] [r]eversal is unwarranted." *Id.* (citation omitted).

The Court of Appeals reasonably adjudicated the claim. As an initial matter, and as noted by the State court, Petitioner presented no evidence either to the State courts or to this Court that he has or had an expert witness willing to testify about eyewitness identification. *See id.* And a habeas claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006) ("The court is not obligated to speculate about how a[n] [] expert might have swayed the jury."). Petitioner also offered no evidence about the proposed content of an expert witness's testimony. *See* ECF 1. Without such evidence, Petitioner cannot establish that he was prejudiced by his counsel's failure to call an expert witness. *Strickland*, 466 U.S. at 694 ("[Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") The third ineffective assistance of counsel claim thus fails.

D.   *Separate Trials*

Last, Petitioner argued that his counsel should have moved to sever his trial from that of his co-defendant. ECF 1, PgID 44–48. The Michigan Court of Appeals held that "[a trial] court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." *Castillo*, 2020 WL 4726545, at *11 (quotation omitted). And the Court of

10

Appeals rejected the claim because "[Petitioner] has not shown that a great potential for prejudice existed such that a motion for severance would have been granted even if his counsel had made the appropriate motion." *Id.* at *12.

Trial counsel did not perform deficiently by failing to make a motion that was meritless under State law. A State court's determination that separate trials are not warranted under State rules of procedure is a determination of a State law question binding on this Court. *See Bradley v. Birkett*, 192 F. App'x. 468, 477 (6th Cir. 2006) "federal habeas corpus relief does not lie for errors of State law." *Id.* (cleaned up). Petitioner also failed to demonstrate that he was prejudiced by his counsel's failure to raise a frivolous motion. *See* ECF 1; *see also Strickland*, 466 U.S. at 694 ("[Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Thus, the fourth ineffective assistance of counsel claim fails. Because all four claims of ineffective assistance of counsel fall short, Petitioner is not entitled to habeas relief on that ground.

II.    <u>Confrontation Clause</u>

Petitioner asserted that the trial court violated his Sixth Amendment confrontation rights by prohibiting defense counsel from cross-examining Gomez about alleged drug debts. ECF 1, PgID 50–55. The Michigan Court of Appeals considered the same claim and held that "contrary to defendants' implication, the issue was allowed into the trial—and Gomez testified in the prosecutor's favor." *Castillo*, 2020 WL 4726545, at *1. Indeed, "Castillo's attorney, James Piazza, did, in

11

fact, ask the question about whether Gomez owed people money for drugs, and Gomez said no." *Id.*

The Sixth Amendment guarantees the right of an accused "to be confronted with the witnesses against him." U.S. Const. Amend. VI; *see Pointer v. Texas*, 380 U.S. 400, 407–08 (1965). Cross-examination is a "primary interest secured" by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974). Thus, it is a "violation of the Confrontation Clause [when a defendant is] prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quotation omitted).

At trial, Castillo's counsel cross-examined Gomez. *See* ECF 9-7, PgID 448. After eliciting testimony that Gomez used drugs, defense counsel asked Gomez whether he had drug debts. *Id.* Gomez said he did not. *Id.* When defense counsel pressed Gomez on his answer, the State objected on relevance grounds. *Id.* During a colloquy outside the presence of the jury, defense counsel argued that the testimony was relevant because the defense had a right to elicit testimony that someone else might have had a motive to commit the assault. *Id.* at 448–449. The prosecutor responded that no evidence supported that line of questioning. *Id.* After hearing both sides, the trial court prohibited defense counsel from questioning Gomez about drug

debts unless defense counsel produced some other evidence in support of his theory. *Id.* at 449. Defense counsel never produced more evidence.

"Trial judges retain wide latitude . . . to impose reasonable limits on [] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. A court does not abuse its discretion and may limit cross-examination when the defendant lacks any evidence on the subject matter denied by the witness. *See Brinkley v. Houk*, 831 F.3d 356, 363 (6th Cir. 2016) (holdingthat a trial court properly precluded cross-examination on whether jail-house informant received a lesser sentence in exchange for testimony when no evidence supported that theory).

Here, defense counsel was allowed to question Gomez whether he had drug debts, and Gomez denied that he did. *See* ECF 9-7, PgID 448. It was reasonable for the trial judge to prevent further cross-examination on the subject because the defense could not provide other evidence of the drug debts. *See Houk*, 831 F.3d at 363. Because it was reasonable, and because Defendant had an opportunity to confront and impeach Gomez, the trial court did not violate Petitioner's Sixth Amendment rights. Petitioner's second argument for habeas relief fails.

III.   <u>Fair and Impartial Jury</u>

Petitioner argued that he was denied his right to a fair and impartial jury. ECF 1, PgID 56–59. Petitioner claimed that a juror admitted in a written statement that he looked up Petitioner and Castillo on the internet during trial. *Id.* at 56. The juror

allegedly admitted that his research biased him against Defendants. *Id.* And the statement allegedly indicated that the juror told the rest of the jury about the information and attempted to contact witnesses and Castillo's family members after the trial. *Id.*

Petitioner raised the same claim on appeal. *Castillo*, 2020 WL 4726545, at *8. But the Michigan Court of Appeals rejected the claim because "quite simply, no juror testimony [was presented to] impeach the verdict. Despite extensive efforts by the defense attorneys, [the juror] would not appear to testify at the evidentiary hearings on remand." *Id.* at *9. Besides which, the written statement the juror provided was "never notarized" and was not accompanied by any "sworn affidavits." *Id.* Thus, the Court of Appeals held that "[n]o error requiring reversal occurred" because "[t]he trial court correctly concluded that defendants produced no competent evidence to support their claims about extraneous influences on the jury." *Id.*

Under the Sixth Amendment, a criminal defendant is guaranteed the right to a trial "by an impartial jury." U.S. Const. amend. VI. "This guarantee requires a jury to arrive at its verdict 'based upon the evidence developed at the trial.'" *Smith v. Nagy*, 962 F.3d 192, 199 (6th Cir. 2020) (quotation omitted). When a defendant raises a colorable claim of juror bias the trial court "must conduct a hearing with all interested parties." *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005) (cleaned up).

Here, Petitioner made a colorable claim of juror bias, and the Michigan Court of Appeals remanded the issue and instructed the trial court to hold an evidentiary

hearing. ECF 11-1, PgID 767. At the hearing, both Castillo and Petitioner were afforded a full and fair opportunity to present evidence in support of the claim. But Petitioner and his co-defendant only produced a single un-notarized, unsworn statement allegedly written by one of the lawyers. *Castillo*, 2020 WL 4726545, at *8–9. The trial court noted that "anyone could have written the statement and signed it." ECF 9-12, PgID 602. Thus, the trial court properly considered the allegation of juror bias. *See Owens*, 426 F.3d at 805.

On habeas review, a State court's finding on whether an extraneous matter affected jury deliberations is entitled to a high measure of deference. *Rushen v. Spain*, 464 U.S. 114, 120 (1983). A State court's finding on the impartiality of a juror "must be determined, in the first instance, by [S]tate courts and deferred to, in the absence of convincing evidence to the contrary, by the federal courts." *Id.* (quotation omitted); *see* 28 U.S.C. § 2254(e)(2); *Gall v. Parker*, 231 F.3d 265, 334 (6th Cir. 2000). Indeed, a federal court may not substitute its view of possible juror bias for the State court's view; a federal court may only overturn findings of juror impartiality if those findings were manifestly erroneous. *See DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998).

The trial court found that Petitioner failed to present competent evidence of juror misconduct or bias. ECF 9-12, PgID 602; *Castillo*, 2020 WL 4726545, at *8. And Petitioner did not offer clear and convincing evidence to overcome the factual determination by the State court. *See* ECF 1. In fact, the habeas petition merely presented the same argument, hamstrung by the same lack of evidence, as

Case 2:22-cv-10658-SJM-EAS   ECF No. 13, PageID.1469   Filed 05/02/23   Page 16 of 18

Petitioner's prior appeals. *Compare* ECF 1, PgID 56–59, *with* ECF 9-12. Accordingly, the third argument Petitioner raised in his habeas petition fails.

IV.    <u>Newly Discovered Evidence</u>

Last, Petitioner asserted that he was entitled to a new trial based on newly discovered evidence. ECF 1, PgID 64–67. Specifically, he argued that the State's witness Shelton stated after trial that  Petitioner was not one of the men who assaulted Gomez. *Id.* at 64. Petitioner raised the same claim in his remand hearing. ECF 9-12, PgID 604. But the trial court did not find the new testimony credible. *Id.* The trial court found that "[n]early two years after he testified at trial, Shelton executed an affidavit telling a very different story." *Id.* And "[w]hile recanting testimony is generally considered inherently unreliable, Shelton's recanting testimony is particularly suscept for a variety of reasons." *Id.* at 607. Notably, "Shelton appeared to be extremely nervous while testifying," and he "failed to provide a clear answer" when asked about basic omissions in his story. *Id.* The trial court thus rejected the new testimony. And the Court of Appeals affirmed the finding and stated that "[t]he trial court's reasoning is persuasive, and the court did not err by finding that Shelton's 'new' testimony would not be believed by any reasonable juror." *Castillo*, 2020 WL 4726545, at *7. The appellate court also held that "the trial court's finding is supported by the record." *Id.* (alterations omitted). And "the most pertinent facet of all in terms of the trial court's assessment of Shelton's new testimony is that he claimed at the evidentiary hearing that he told the truth at trial, even though at

the evidentiary hearing and in his affidavit, he was averring something else entirely." *Id.*

The fourth claim Petitioner presented is essentially a free-standing claim of innocence based on alleged newly discovered evidence. But such claims "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying [S]tate criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.* And the Sixth Circuit has ruled that a freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("[W]e have repeatedly indicated that such claims [of actual innocence] are not cognizable on habeas."). Thus, the claim for habeas relief based on the free-standing claim of innocence fails.

In all, each of the five arguments Petitioner raised on habeas review fails. The Court will therefore deny his motion for a writ of habeas corpus. To appeal the Court's decision, Petitioner must obtain a certificate of appealability, which requires him to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner must show "that reasonable jurists could debate whether" the Court should have resolved the § 2254 petition "in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks and quotation

omitted). Jurists of reason would not debate the Court's denial of the petition. The Court will thus deny a certificate of appealability.

Last, the Court will deny Petitioner leave to appeal in forma pauperis because he cannot take an appeal in good faith. *See* Fed. R. App. P. 24(a); 28 U.S.C. § 1915(a)(3).

**WHEREFORE**, it is hereby **ORDERED** that the habeas petition [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to appeal in forma pauperis is **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 2, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 2, 2023, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager